1

2

3

4

5

6

7             IN THE UNITED STATES DISTRICT COURT

8           FOR THE EASTERN DISTRICT OF CALIFORNIA

9   RONALD E. WALTON,

10          Plaintiff,                    No. 2:10-cv-2608 EFB P[1]

11      vs.

12   C. FREY, et al.,
                                          ORDER AND
13          Defendants.                   FINDINGS AND RECOMMENDATIONS

14   _____/

15          Plaintiff is a former state prisoner proceeding without counsel and in forma pauperis in

16   an action brought under 42 U.S.C. § 1983.  This action proceeds on plaintiff's Eighth

17   Amendment claims against defendants Busig, McCraw, Rosario, and Frey.  Defendants move for

18   summary judgment.[2]  For the reasons stated below, the undersigned finds that there is no genuine

19   _____

20          [1] Defendants failed to respond to the court's order filed on February 24, 2011, Dckt. No.
     10, directing that they complete and return the form indicating either their consent to jurisdiction
21   of the magistrate judge or request for reassignment to a district judge.  Accordingly, the clerk is
     directed to randomly assign this case to a district judge and these findings will issue as a
22   recommendation rather than an order and judgment.

23          [2] Defendants' motion, originally filed on November 8, 2011, was re-filed and re-served
     on August 7, 2012, in accordance with the court's July 25, 2012 order.  *See* Dckt. No. 28
24   (ordering defendants to re-serve the motion along with the notice to plaintiff required by *Woods
     v. Carey*, 684 F.3d 934 (9th Cir. 2012)).  Because plaintiff failed to file an amended opposition,
25   the court considers plaintiff's previously filed opposition (Dckt. No. 24) in resolving the motion.
     *See* Dckt. No. 28 (informing plaintiff he could file an amended opposition within 30 days, and
26   that if he failed to do so, the court would consider his existing opposition in resolving the
     motion).

1    dispute as to any material fact, and that defendants' motion must be granted.

2    **I.    Background**

3         This action proceeds on plaintiff's September 24, 2010 complaint.  Dckt. No. 1.  Plaintiff

4    claims that on February 18, 2010, defendant Rosario snatched a folder from his hand and threw it

5    to the ground.  *Id.* at 5.  Plaintiff claims that Rosario then ordered plaintiff to spread his legs and

6    he complied.  *Id.*  Plaintiff claims that Rosario ordered him to spread his legs even wider and that

7    he informed Rosario that a joint disorder prevented him from doing so.  Plaintiff contends that he

8    produced a medical chrono documenting his medical condition.  *Id.*  According to plaintiff,

9    defendants McCraw, Busig and Frey were all observing the encounter between plaintiff and

10   Rosario.  *Id.*  Frey apparently asked plaintiff where his mobility vest was, and plaintiff responded

11   that he did not have one.  *Id.*  Next, Rosario purportedly kicked plaintiff's legs farther apart.  *Id.*

12   Plaintiff claims this caused him such severe pain that he brought his legs back together and then

13   fell to the ground.  *Id.*  According to plaintiff, none of the defendants helped him as he fell.  *Id.* at

14   8.  Busig then allegedly pounced on plaintiff's back and neck, further injuring plaintiff.  *Id.* at 5.

15   Plaintiff claims that he tried to explain that he was in pain, but McCraw just got on his radio to

16   announce that the officers had a resisting inmate.  *Id.*  Defendants Busig and McCraw allegedly

17   put plaintiff in handcuffs and violently snatched plaintiff from the ground.  *Id.*  Thereafter, Busig

18   allegedly shredded plaintiff's medical chrono.  *Id.*  When plaintiff asked if he could sit in a chair

19   because of his pain during a subsequent strip-search, Busig and McCraw allegedly forced him to

20   stand.  *Id.* at 6.  Later, plaintiff claims he overheard Frey, Busig, McCraw and Rosario laughing

21   because they thought plaintiff had faked the fall.  *Id.*

22   **II.    Summary Judgment Standards**

23        Summary judgment is appropriate when there is "no genuine dispute as to any material

24   fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  Summary

25   judgment avoids unnecessary trials in cases in which the parties do not dispute the facts relevant

26   to the determination of the issues in the case, or in which there is insufficient evidence for a jury

to determine those facts in favor of the nonmovant.  *Crawford-El v. Britton*, 523 U.S. 574, 600 (1998); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-50 (1986); *Nw. Motorcycle Ass'n v. U.S. Dep't of Agric.*, 18 F.3d 1468, 1471-72 (9th Cir. 1994).  At bottom, a summary judgment motion asks whether the evidence presents a sufficient disagreement to require submission to a jury.

The principal purpose of Rule 56 is to isolate and dispose of factually unsupported claims or defenses.  *Celotex Cop. v. Catrett*, 477 U.S. 317, 323-24 (1986).  Thus, the rule functions to "'pierce the pleadings and to assess the proof in order to see whether there is a genuine need for trial.'"  *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (quoting Fed. R. Civ. P. 56(e) advisory committee's note on 1963 amendments).  Procedurally, under summary judgment practice, the moving party bears the initial responsibility of presenting the basis for its motion and identifying those portions of the record, together with affidavits, if any, that it believes demonstrate the absence of a genuine issue of material fact.  *Celotex*, 477 U.S. at 323; *Devereaux v. Abbey*, 263 F.3d 1070, 1076 (9th Cir. 2001) (en banc).  If the moving party meets its burden with a properly supported motion, the burden then shifts to the opposing party to present specific facts that show there is a genuine issue for trial.  Fed. R. Civ. P. 56(e); *Anderson.*, 477 U.S. at 248; *Auvil v. CBS "60 Minutes"*, 67 F.3d 816, 819 (9th Cir. 1995).

A clear focus on where the burden of proof lies as to the factual issue in question is crucial to summary judgment procedures.  Depending on which party bears that burden, the party seeking summary judgment does not necessarily need to submit any evidence of its own.  When the opposing party would have the burden of proof on a dispositive issue at trial, the moving party need not produce evidence which negates the opponent's claim.  *See e.g., Lujan v. National Wildlife Fed'n*, 497 U.S. 871, 885 (1990).  Rather, the moving party need only point to matters which demonstrate the absence of a genuine material factual issue.  *See Celotex*, 477 U.S. at 323-24 (1986). ("[W]here the nonmoving party will bear the burden of proof at trial on a dispositive issue, a summary judgment motion may properly be made in reliance solely on the 'pleadings,

depositions, answers to interrogatories, and admissions on file.'").  Indeed, summary judgment should be entered, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial.  *See id.* at 322.  In such a circumstance, summary judgment must be granted, "so long as whatever is before the district court demonstrates that the standard for entry of summary judgment, as set forth in Rule 56(c), is satisfied."  *Id.* at 323.

To defeat summary judgment the opposing party must establish a genuine dispute as to a material issue of fact.  This entails two requirements.  First, the dispute must be over a fact(s) that is material, i.e., one that makes a difference in the outcome of the case.  *Anderson*, 477 U.S. at 248 ("Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment.").  Whether a factual dispute is material is determined by the substantive law applicable for the claim in question.  *Id.*  If the opposing party is unable to produce evidence sufficient to establish a required element of its claim that party fails in opposing summary judgment.  "[A] complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial."  *Celotex*, 477 U.S. at 322.

Second, the dispute must be genuine.  In determining whether a factual dispute is genuine the court must again focus on which party bears the burden of proof on the factual issue in question.  Where the party opposing summary judgment would bear the burden of proof at trial on the factual issue in dispute, that party must produce evidence sufficient to support its factual claim.  Conclusory allegations, unsupported by evidence are insufficient to defeat the motion. *Taylor v. List*, 880 F.2d 1040, 1045 (9th Cir.1989).  Rather, the opposing party must, by affidavit or as otherwise provided by Rule 56, designate specific facts that show there is a genuine issue for trial.  *Anderson*, 477 U.S. at 249; *Devereaux*, 263 F.3d at 1076.  More significantly, to demonstrate a genuine factual dispute the evidence relied on by the opposing party must be such

1    that a fair-minded jury "could return a verdict for [him] on the evidence presented." *Anderson*,

2    477 U.S. at 248, 252.  Absent any such evidence there simply is no reason for trial.

3           The court does not determine witness credibility.  It believes the opposing party's

4    evidence, and draws inferences most favorably for the opposing party.  *See id.* at 249, 255;

5    *Matsushita*, 475 U.S. at 587.  Inferences, however, are not drawn out of "thin air," and the

6    proponent must adduce evidence of a factual predicate from which to draw inferences.  *American*

7    *Int'l Group, Inc. v. American Int'l Bank*, 926 F.2d 829, 836 (9th Cir.1991) (Kozinski, J.,

8    dissenting) (citing *Celotex*, 477 U.S. at 322).  If reasonable minds could differ on material facts

9    at issue, summary judgment is inappropriate.  *See Warren v. City of Carlsbad*, 58 F.3d 439, 441

10   (9th Cir. 1995).  On the other hand, "[w]here the record taken as a whole could not lead a rational

11   trier of fact to find for the nonmoving party, there is no 'genuine issue for trial.'"  *Matsushita*,

12   475 U.S. at 587 (citation omitted); *Celotex.*, 477 U.S. at 323 (If the evidence presented and any

13   reasonable inferences that might be drawn from it could not support a judgment in favor of the

14   opposing party, there is no genuine issue).  Thus, Rule 56 serves to screen cases lacking any

15   genuine dispute over an issue that is determinative of the outcome of the case.

16          Defendants' re-filed motion for summary judgment included a notice to plaintiff

17   informing him of the requirements for opposing a motion pursuant to Rule 56 of the Federal

18   Rules of Civil Procedure.  *See Woods v. Carey*, 684 F.3d 934 (9th Cir. 2012); *Rand v. Rowland*,

19   154 F.3d 952, 957 (9th Cir. 1998) (en banc); *cert. denied*, 527 U.S. 1035 (1999); *Klingele v.*

20   *Eikenberry*, 849 F.2d 409 (9th Cir. 1988).

21   **III.    Eighth Amendment Standards**

22          "[O]nly those deprivations denying the minimal civilized measure of life's necessities are

23   sufficiently grave to form the basis of an Eighth Amendment violation."  *Wilson v. Seiter*, 501

24   U.S. 294, 298 (1991) (internal citations omitted).  A prison official violates the Eighth

25   Amendment's proscription of cruel and unusual punishment where he or she deprives a prisoner

26   of those necessities with a "sufficiently culpable state of mind."  *Farmer v. Brennan*, 511 U.S.

825, 834 (1994).  A showing of negligence or gross negligence is not sufficient.  *Id.* at 835-36; *Wood v. Housewright*, 900 F.2d 1332, 1334 (9th Cir. 1990).  Rather, a prisoner must show that the defendant acted with "deliberate indifference" to his health or safety.  *Farmer*, 511 U.S. at 834.  To do so, the prisoner must establish that the defendant knew of and disregarded an excessive risk to his health or safety.  *Id.* at 837, 842 (knowledge can be inferred from the obviousness of the risk).  A prison official may thus be free from liability if he or she did not know of the risk or took reasonable action in response to the risk.  *Id.* at 844.

"[W]henever prison officials stand accused of using excessive physical force in violation of the Cruel and Unusual Punishments Clause, the core judicial inquiry is . . .: whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm."  *Hudson v. McMillian*, 503 U.S. 1, 6-7 (1992).  While malicious and sadistic uses of force always violate contemporary standards of decency, not every "malevolent touch" by a prison guard is actionable as an Eighth Amendment violation.  *Id.* at 9.  "The Eighth Amendment's prohibition of cruel and unusual punishment necessarily excludes from constitutional recognition *de minimis* uses of physical force, provided that the use of force is not of a sort repugnant to the conscience of mankind."  *Id.* at 9-10 (internal quotation marks and citations omitted).  What violates the Eighth Amendment is "the unnecessary and wanton infliction of pain," i.e., infliction of suffering that is "totally without penological justification."  *Rhodes v. Chapman*, 452 U.S. 337, 346 (1981).  The following factors are relevant to a determination of whether a use of force violated the Eighth Amendment: (1) the need for the use of force; (2) the relationship between the need for force and the amount used; (3) the extent of injury inflicted; (4) the extent of the threat the officers reasonably perceived the plaintiff to pose to staff and inmate safety; and (5) any efforts made to temper the severity of the forceful response.  *Whitley v. Albers*, 475 U.S. 312, 321 (1986).

////

////

IV.   **Analysis**

The evidence submitted with defendants' motion includes Rosario's declaration that on February 18, 2010, he attempted to search plaintiff by first ordering plaintiff to place his hands on his head and spread his feet.  Defs.' Mot. for Summ. J. ("Defs.' MSJ") , Ex. A ("Rosario Decl.") ¶¶ 3-4; Ex. F1 (Rules Violation Report log no. S1-10-02-011) ("RVR") at 1.  In response, plaintiff placed his hands on his head but refused to spread his legs and stated "I'm mobility."  Rosario Decl. ¶ 5, RVR at 1.  In his opposition, plaintiff states that he did not refuse Rosario's order, but rather, tried to inform Rosario that he is mobility impaired.[3]  Pl.'s Opp'n at 5:1-4.  Rosario states that he interpreted plaintiff's statement to mean that he had a mobility impairment.  Rosario Decl. ¶ 6.  Under CDCR's procedures, however, the medical department issues mobility impaired inmates a mobility-impairment vest and plaintiff was not wearing such a vest.  *Id.* ¶¶ 7, 8; Defs.' MSJ, Ex. A. ("Pl.'s Dep.") at 16:4-7.  For this reason, Rosario did not believe that plaintiff had a mobility impairment.  Rosario Decl. ¶ 8.

Although the parties dispute what happened next, the dispute is not material to whether Rosario violated plaintiff's Eighth Amendment rights.  Rosario states that to facilitate his search of plaintiff, he placed his foot between plaintiff's legs and spread plaintiff's feet shoulder-width apart.  Rosario Decl. ¶ 9; RVR at 1.  Rosario states that plaintiff then lifted his feet, placed them back together, and lowered himself to the ground.  Rosario Decl. ¶10; RVR at 5.  According to plaintiff, however, Rosario placed his foot between plaintiff's legs and kicked with force, which caused plaintiff to bring his legs back together and fall to the ground.  Pl.'s Opp'n at 5:12-13.

To defeat defendants' motion, plaintiff must, through evidence, create a triable issue as to whether Rosario knew of and disregarded an excessive risk to plaintiff's health or safety or that

---

[3] Attached to plaintiff's unsworn opposition brief are: (1) the record of plaintiff's administrative appeal regarding the February 18, 2010 incident; (2) the verified complaint, filed in this action September 24, 2010; (3) the record of a citizen's complaint filed by another inmate, based on an encounter with Rosario, and (4) a letter to plaintiff from the Government Claims Program.  Pl.'s Opp'n, Exs. A-E.

he acted maliciously and sadistically for the purpose of causing plaintiff harm.  To do so, plaintiff must present evidence that would permit a reasonable jury to resolve the dispute in his favor.  *Anderson*, 477 U.S. at 248, 252.  Plaintiff has not done so.

It is undisputed that Rosario was trying to conduct a search of plaintiff and that plaintiff did not move his feet wider when instructed to do so.  Assuming that Rosario's kick was so strong that it caused plaintiff to fall, this alone cannot support a finding that Rosario's actions amounted to the unnecessary and wanton infliction of pain that was totally without penological justification.  Although plaintiff made a statement to Rosario indicating that he, plaintiff, was mobility impaired, plaintiff was not wearing one of the vests issued by the medical department to designate for staff mobility impaired inmates, and for that reason, Rosario did not believe that plaintiff was in fact mobility impaired.

At most, plaintiff seems to suggest a dispute over whether Rosario was negligent in not crediting plaintiff's statement even though plaintiff was not wearing the prescribed vest which would have validated his claim of a mobility impairment.  Assuming such a dispute, it is ultimately immaterial.  Mere negligence is not enough.  Rather, the Supreme Court has established a subjective approach.  Under that "standard, the prison official must not only 'be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists,' but that person 'must also draw the inference.'" *Toguchi v. Chung*, 391 F.3d 1051, 1057 (quoting *Farmer v. Brennan*, 511 U.S. 825, 837 (1994).  Here, Rosario's declaration directly asserts that he did not believe that plaintiff was, in fact, mobility impaired.  While evidence (direct or circumstantial) can be presented in an effort to show that an officer's denial of knowledge is not credible, which could then enable a reasonable jury to conclude that the defendant had the requisite knowledge, *see, e.g. Farmer,* 511 U.S. at 842-43, no such evidence has been presented here.  Plaintiff's statement "I'm mobility" in response to the officer's order, coupled with the absence of a mobility-impairment vest issued by the medical department left the officer with an on-the-spot judgment to make as to whether to believe the inmate.  Rosario

8

1  did not believe plaintiff.  Even if plaintiff had a mobility impairment,[4] at most plaintiff might be

2  able to criticize the choice the officer made.  Indeed, under the facts plaintiff alleges it might

3  even have been a negligent choice.  But the absence of the vest supports the officer's declaration

4  testimony that he did not believe plaintiff was telling the truth as to an impairment that could

5  excuse plaintiff's compliance with the search protocol.  No other evidence is presented as to the

6  officer's state of mind when he acted.  "If a [prison official] should have been aware of the risk,

7  but was not, then the [official] has not violated the Eighth Amendment, no matter how severe the

8  risk."  *Gibson v. County of Washoe, Nevada*, 290 F.3d 1175, 1188 (9th Cir.2002).

9        And aside from his own self-serving statements that he was injured and in pain, plaintiff

10  fails to produce evidence that Rosario (or any other defendant) caused him serious harm on

11  February 18, 2010.  *See FTC v. Neovi, Inc.*, 604 F.3d 1150, 1159 (9th Cir. 2010) (stating that,

12  while "[s]pecific testimony by a single declarant can create a triable issue of fact, . . . the district

13  court . . . need not find a genuine issue of fact if, in its determination, the particular declaration

14  was uncorroborated and self-serving"); *Rodriguez v. Airborne Express*, 265 F.3d 890, 902 (9th

15  Cir. 2001) ("This circuit has held that self-serving affidavits are cognizable to establish a

16  genuine issue of material fact so long as they state facts based on personal knowledge and are

17  not too conclusory.").  In sum, plaintiff has not produced evidence upon which a reasonable jury

18  could conclude that Rosario's conduct amounted to a violation of plaintiff's Eighth Amendment

19  rights.

20        Next, plaintiff claims that defendants McCraw, Busig, and Frey failed to help plaintiff as

21  he fell.  The record on this motion establishes that during Rosario's interaction with plaintiff,

22

23        [4] Officer Busig testifies in his declaration that during his escort of plaintiff to the Program Office plaintiff "told me he had a medical condition that prevented him from spreading his legs." Busig Decl. ¶ 16.  Busig testifies that he then "called the Medical Department to verify whether Walton had any medical disabilities or conditions" and he was informed that plaintiff did *not* have any such conditions.  But more importantly for purposes of this summary judgment motion, plaintiff was not wearing a mobility-impairment vest at the time and he presents no evidence to show that the officers were otherwise aware of any serious risk to plaintiff if he were forced to submit to the search, including forcing his legs apart.

24

25

26

1   McCraw, Busig, and Frey provided security and supervised the other inmates in the area.  Defs.'

2   MSJ, Ex. C ("McCraw Decl.") ¶ 3; Ex. D ("Busig Decl.") ¶ 3; Ex. E ("Frey Decl.") ¶ 3.  They

3   testify that in observing the interaction between plaintiff and Rosario, they did not believe that

4   there was an excessive risk to plaintiff's safety, as it appeared to them that plaintiff gently

5   lowered himself to the ground and did not appear to be in pain.  Busig Decl. ¶¶ 9, 10; McCraw

6   Decl. ¶¶ 14, 15; Frey Decl. ¶¶ 11, 12.  Defendants state that there was nothing about the way in

7   which plaintiff reached the ground that caused them to believe that plaintiff was injured in any

8   way.  Rosario Decl. ¶ 13; Busig Decl. ¶ 11; McCraw Decl. ¶ 16; Frey Decl. ¶ 13.  Defendants

9   also submit evidence that plaintiff was not injured as a result of his encounter with defendants on

10  February 18, 2010.  Defs.' MSJ, Ex. F2.

11          Plaintiff contends that McCraw, Busig, and Frey should have intervened during his

12  encounter with Rosario because they were on notice of Rosario's alleged history of excessive

13  force.  Pl.'s Opp'n at 9:8-14.  To support this contention, plaintiff submits a copy of a complaint

14  filed by another inmate against Rosario, based on an incident that allegedly occurred in January

15  of 2011.  Id. at 58, 61-63.  However, this complaint concerns an incident that occurred nearly a

16  year after the alleged February 18, 2010 incident involving plaintiff.  It is simply not relevant to

17  plaintiff's argument that McCraw, Busig, and Frey were somehow on notice of a history of

18  excessive force by Rosario.  Moreover, even if McCraw, Busig, and Frey watched Rosario kick

19  plaintiff's legs apart to commence a search, causing him to fall to the ground, it remains

20  undisputed that plaintiff did not appear to be injured or in pain, and that he suffered no injury.

21  Because the undisputed facts show that Rosario, McCraw, Busig, and Frey were not aware of

22  any excessive risk to plaintiff's health and safety, and because there was no risk given that

23  plaintiff suffered no injuries following his alleged fall, defendants are entitled to summary

24  judgment on this aspect of plaintiff's Eighth Amendment claim.

25          Plaintiff claims that once he was on the ground, Busig "pounced" on him and that Busig

26  and McCraw then "violently" pulled him up and handcuffed him.  Pl.'s Opp'n at 4:17-18, 5:28.

1  However, plaintiff does not produce any evidence of injury or otherwise create a triable issue as

2  to defendants' motivation in handcuffing plaintiff and bringing him to his feet.  Busig states that

3  his sole motivation for handcuffing plaintiff was to ensure institutional safety and security

4  because plaintiff had disobeyed Rosario's orders, and the safest way to ensure that plaintiff did

5  not attempt to assault defendants was to place him in handcuffs.  Busig Decl. ¶ 13.  Busig and

6  McCraw then assisted plaintiff to his feet to ensure that he did not injure himself in an attempt to

7  stand up.  Busig Decl. ¶ 14; McCraw Decl. ¶ 18.  Here, there is no genuine dispute as to whether

8  the conduct of Busig and McCraw was malicious and sadistic, as the evidence shows that the

9  force they used was de minimis and caused plaintiff no injury.  Accordingly, Busig and McCraw

10  are entitled to summary judgment on this aspect of plaintiff's Eighth Amendment claim.

11       Lastly, plaintiff claims that his Eighth Amendment rights were violated when Busig and

12  McCraw refused to let him sit down during a strip-search.  Pl.'s Opp'n at 6:1-4.  Plaintiff claims

13  he provided Busig with a pass concerning his medical condition but Busig shredded it.  *Id.* at

14  6:4-7.  Defendants' evidence establishes that after plaintiff told Busig that he had a medical

15  condition which prevented him from spreading his legs, Busig called the medical department to

16  verify whether plaintiff had any medical disabilities or conditions.  Busig Decl. ¶¶ 16, 17; RVR

17  at 6.  The medical department informed Busig that plaintiff did not have any medical disabilities

18  or conditions.  Busig Decl. ¶ 18; RVR at 6.  Busig then relayed this information to McCraw.

19  McCraw Decl. ¶ 20; Busig Decl. ¶ 18.  After Busig informed McCraw that plaintiff did not have

20  any medical disabilities or conditions, Busig and McCraw strip-searched plaintiff.  Pl.'s Dep.

21  21:11-18.  During the strip-search, plaintiff requested to sit in a chair, claiming he was in pain.

22  Pl.'s Dep. 22:9-21.  Because the medical department had informed Busig that plaintiff did not

23  have any medical disabilities or conditions, and because plaintiff did not appear to be in any pain

24  during McCraw and Busig's interaction with him, McCraw refused plaintiff's request to sit down

25  in a chair.  McCraw Decl. ¶ 22; Busig Decl. ¶ 20; Pl.'s Dep. 22:15-17.  McCraw and Busig then

26  escorted plaintiff to the medical department.  Pl.'s Dep. 22:24-23:2.  At the medical department,

1    a registered nurse examined plaintiff and noted no injuries.  Defs.' MSJ, Ex. F2.

2          In his opposition, plaintiff claims to suffer from arthritis, but does not produce any

3    evidence to support this claim, and does not produce any evidence to dispute the fact the medical

4    department informed Busig that plaintiff had no medical disabilities or conditions.  *See* Pl.'s

5    Opp'n at 6:18-19.  Moreover, the evidence shows that Busig and McCraw responded reasonably

6    to plaintiff's complaint of pain by escorting him to the medical department after concluding the

7    strip-search.  Accordingly, Busig and McCraw are entitled to summary judgment, because

8    plaintiff produces no evidence suggesting that they were deliberately indifferent when they

9    denied his request to sit in a chair during a strip-search or that they were aware of any excessive

10   risk to plaintiff's health and safety when they denied his request to sit in a chair.

11         As set forth above, plaintiff has failed to present any evidence that defendants' conduct

12   violated his rights under the Eighth Amendment.  When the evidence is viewed in the light most

13   favorable to plaintiff, and reasonable inferences are drawn in his favor, no reasonable jury could

14   return a verdict for him and against defendants.  Defendants are therefore entitled to judgment as

15   a matter of law.

16         Accordingly, IT IS HEREBY ORDERED that the Clerk of the Court shall randomly

17   assign a United States District Judge to this action.

18         Further, IT IS HEREBY RECOMMENDED that:

19         1.  Defendants' motion for summary judgment (Dckt. No. 29) be granted;

20         2.  The Clerk be directed to enter judgment in defendants' favor; and

21         3.  The Clerk be directed to close this case.

22         These findings and recommendations are submitted to the United States District Judge

23   assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l).  Within fourteen days

24   after being served with these findings and recommendations, any party may file written

25   objections with the court and serve a copy on all parties.  Such a document should be captioned

26   "Objections to Magistrate Judge's Findings and Recommendations."  Failure to file objections

within the specified time may waive the right to appeal the District Court's order. *Turner v. Duncan*, 158 F.3d 449, 455 (9th Cir. 1998); *Martinez v. Ylst*, 951 F.2d 1153 (9th Cir. 1991).

Dated:  February 27, 2013.

EDMUND F. BRENNAN
UNITED STATES MAGISTRATE JUDGE